UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WILLIAM D. MEDLEY,

    Plaintiff,                                   CASE NO:    6:08-cv-1456-ORL-18-DAB

Vs.

CITY OF ORLANDO, and
Officer JAMES PARKER,
Individually and in his official
Capacity,

    Defendants.
_____/

**RESPONSE TO DEFENDANT, CITY OF ORLANDO'S, MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW**

Plaintiff, WILLIAM D. MEDLEY, by and through undersigned counsel, hereby responds to Defendant, CITY OF ORLANDO'S Motion for Summary Judgment bearing a certificate of service of June 1, 2009, and states as follows:

### I.    INTRODUCTION

Plaintiff, WILLIAM D. MEDLEY, alleged a five count Third Amended Complaint (Doc. 29). Count I alleges an action for false arrest and imprisonment against the City of Orlando. Count IV alleges a state common law battery claim against Officer James Parker in his official capacity, and therefore, a claim against the City of Orlando.

On November 27, 2006, William D. Medley was in a breezeway assembling lawfully with friends and voicing verbal protests to police authority when Officer James Parker of the Orlando Police Department (OPD) responded to the verbal protests and arrested the Plaintiff. In his attempt to take the Plaintiff into custody, Officer Parker used physical force to detain him, including deploying his department issued Taser. The

Plaintiff was taken to the hospital for treatment and then taken to the Orange County Jail on a no bond status and was not released until December 18, 2006.

## II. STANDARD FOR REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a general rule, summary judgment shall be entered with caution. "Summary judgment will not lie if the dispute about a material fact is genuine." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A movant for summary judgment has the initial burden of demonstrating the non-existence of any genuine issue of material fact. Once the movant tenders competent evidence to support the motion, the opposing party must come forward with counter evidence sufficient to reveal a genuine issue. It is not enough for the opposing party merely to assert that an issue does exist. Id. *quoting* First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968). A dispute over an issue of material fact is genuine if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III. STATEMENT OF MATERIAL UNDISPUTED FACTS

On November 26, 2006, Officer Parker was working for the Orlando Police Department when he responded to the Palms Apartments. (Parker, p. 36, lines 4 to 11). Mr. Medley was also at the Palms Apartments visiting with his sister, a resident of the Palms Apartments. (Medley, p. 8, lines 10 to 12; 110, lines 18 to 20). Mr. Medley was lawfully on the property and had on his person, a box cutter and a pocket knife because he had been assisting with cutting and replacing carpets in his sister's apartment all day.

(Medley, p. 108, line 15 to p. 109, line 2).  He was not in violation of any law at the time. (Parker, p. 137, lines 8 to 14).  Mr. Medley and a group of people were standing in the breezeway between apartments.  (Parker, p. 51-52, 80).  Mr. Medley, as a guest of an apartment resident, had a lawful right to be in the breezeway.  (Parker, p. 50, 75-76, 110, 129).  Officer Parker did not suspect any member of the group in the breezeway to be involved in criminal activity.  (Parker, p. 55, lines 6 to 9).  Mr. Medley never physically obstructed Officer Parker from conducting an investigation.  (Parker, p. 126, line 18 to 129, line 24).  Officer Parker ordered the members of this group, which included Medley, to leave the breezeway and go inside their apartment without any lawful basis to force them to leave.  (Parker, p. 72; p. 78 line, 17 to p. 79, line 7).  The individuals were in the breezeway of the apartment building and yelled at Officer Parker, prompting Officer Parker to shine his spotlight on the group.  Medley and the other individuals continued to walk in and out of the breezeway and continued to yell at Officer Parker.  (Parker, p.89, lines 15 to 17).  Mr. Medley had a right to risk his own safety and remain in the breezeway, even with the possibility that armed suspects may have been present in the area (Parker, p.79, 129, line 8 to p. 131, 7).

      Mr. Medley never got closer than twenty-three to twenty-four feet of Officer Parker before Medley's arrest.  (Parker, p.123, line 18 to 25).  While still positioned at his patrol car, Officer Parker determined he had probable cause to arrest Mr. Medley. (Parker, 89, line 24 to p. 91, line 23).  Officer Parker kicked Mr. Medley and deployed his taser into Medley's back.  (Parker, 92, line 17 to p. 96, line 23).  The time between kicking and tasing Mr. Medley was no more than a couple of seconds.  (Parker, p. 99, lines 3 to 6).  Mr. Medley was arrested by Officer Parker against his will and without

3

Medley's consent. (Parker, p. 109, lines 14 to 23).

### IV. STATEMENT OF MATERIAL DISPUTED FACTS

1. Mr. Medley alleges that Officer Parker kicked him in the face and stomped on him while attempting to arrest him, which Officer Parker denies this. (Medley, 138, line 18 to p. 139, line 4; Parker p. 151, lines 17 to 18).

2. Mr. Medley and Officer Parker disagree about whether Mr. Medley's arms were out in front of him, behind him or underneath his body when Officer Parker deployed the taser (Medley, 137, line 8 to p. 138, line 8; Parker p. 93, line 19 to p. 95, line 23).

3. Officer Parker's statements regarding his fear for officer safety are inconsistent (Parker Affidavit ¶¶ 12, 18; Parker p. 107, line 12 to p. 108, line 18).

4. Officer Parker made inconsistent statements regarding his concern for preserving a potential crime scene as a basis for having probable cause and arresting Mr. Medley (Parker Affidavit ¶¶ 16, 26; Parker pp. 73, line 16 to p. 74, line 18, 131, line 16 to p. 135, line 15).

5. Officer Parker's statements regarding whether he asked for assistance from Mr. Medley and the group are inconsistent. (Parker Affidavit, ¶ 26; Parker p.127, line 10 to p. 128, line 8).

### V. MEMORANDUM OF LAW

**A.** **Officer James Parker did Not have Arguable Probable Cause to Arrest William D. Medley.**

No probable cause existed for the arrest of William Medley, and therefore, Officer Parker committed a false arrest and imprisonment, battery, used excessive force in violation of the Fourth Amendment and terminated Mr. Medley's lawful speech and

4

assembly in violation of the First Amendment. An arrest is not constitutionally valid when at the moment the arrest was made, the officers had no probable cause to arrest. Beck v. Ohio, 379 U.S. 89, 91 (1964). Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003; Beck, 379 U.S. at 91.

Officer Parker's own version of the facts underlying the arrest have changed between the time his deposition was taken and the time he prepared an affidavit in support of this Motion for Summary Judgment. During his deposition, Officer Parker contended that the basis for probable cause was Mr. Medley's words and walking in and out of the breezeway that caused Officer Parker to be distracted from establishing his perimeter. (Parker, p. 164, lines 19-23). As asserted in his affidavit, Officer Parker now takes the position that he arrested Mr. Medley for refusing to comply with his order to leave. Parker Affidavit ¶ 26. Officer Parker previously acknowledged that he had no lawful basis to force Mr. Medley to leave. (Parker, p. 130, line 23 to p. 131, line 7).

Mr. Medley was standing with a group in the breezeway across the street from his sister's apartment—a location he had a lawful right to be standing. (Parker, p. 113, lines 13 to 16; p. 128, line 14 to p. 130, line. 24). When Officer Parker asked the group to leave the breezeway or go inside the apartment, Mr. Medley lawfully acted within his rights to refuse to leave the breezeway. (Parker p. 130, line 23 to p. 131, line 7). Wilkerson v. State, 556 So.2d 453, 456 (Fla. 1st DCA 1990). The mere refusal to leave

an area, even while voicing "loud and profane" protests, does not give rise to probable cause. J.G.D. v. State, 724 So.2d 711, 711-12 (Fla. 3rd DCA 1999). In his deposition, Officer Parker attempted to designate the whole of the Palms Apartments as a crime scene. This designation would, in Officer Parker's opinion give him the right to tell anyone within this "crime scene" to leave. Officer Parker understood at the time of his deposition that he was not within his lawful authority to actually make someone leave, or arrest that person for failing to leave. (Parker, p. 134, line 14 to 135, line 21.) Even if designated a crime scene, Mr. Medley could remain in the area. Despite this, Officer Parker now attempts to assert through his affidavit that he needed to ensure the integrity of a crime scene to establish probable cause for the arrest. (Parker ¶ 16, 26). This is not a lawful basis providing probable cause for arrest.

Officer Parker believed he had probable cause to arrest Mr. Medley at the moment he shined his spotlight on Mr. Medley while at his patrol car. (Parker, p. 142, lines 2 to 5). Officer Parker focused on Mr. Medley because he appeared to be the "antagonist or the one most vocal," of the group of protestors, "did most of the talking", and called Officer Parker a "pussy ass cracker" (Parker, p. 89, line 21 to p. 90, line 1). Officer Parker stated he had no reason to believe Mr. Medley was not lawfully in the complex (Parker p. 112, lines 13-16). Officer Parker admitted there was no probable cause to arrest the other persons in the group. (Parker p. 118, lines 8 to 12). He claimed the actions of the other persons were different than Mr. Medley, specifically; (1) Mr. Medley's took two steps north, but still approximately twenty-five feet from Officer Parker, (2) Mr. Medley was larger than the other protestors, and (3) the volume of what Mr. Medley said was louder than the other members of the group (Parker, p. 126, lines 6

to 9).  Such facts do not give rise to probable cause.

### B. The Plaintiff can prevail on his claim for False Arrest

The Plaintiff has established facts to support a prima facie case of false arrest and/or imprisonment against Officer Parker under Florida law.  "The gravamen of the tort of false arrest is the unlawful restraint of a person against the person's will."  Jibory v. City of Jacksonville, 920 So.2d 666, 667 n. 2 (Fla. 1st DCA 2005).  Plaintiff has established restraint contrary to the Plaintiff's will.  (Parker, p. 109, lines 14-23). Plaintiff has also established that the restraint was unlawful.  *Supra*.  These are the elements of a false arrest claim.  Rotte v. City of Jacksonville, 509 So.2d 1252 (Fla. 1st DCA 1987), *citing* City of Hialeah v. Rehm, 455 So.2d 458 (Fla. 3rd DCA 1984).  "In a false arrest action, probable cause is an affirmative defense to be proven by the defendant."  Willingham v. City of Orlando, 929 So.2d 43, 48 (Fla. 5th DCA 2006). Therefore, Defendants have the burden of establishing probable cause for the arrest and continued detention of the Plaintiff as an affirmative defense.  Rivers v. Dillards Department Store, Inc., 698 So.2d 1328, 1331 (Fla. 1st DCA 1997).  Under Florida law, the defense of probable cause must be submitted to the jury in an action for false arrest or imprisonment where there is material controversy as to the facts upon which the police officer relied in making the arrest.  Hernandez v. Metro-Dade County, 992 F.Supp. 1365, 1368 (S.D. Fla. 1997).

In the present case, there is a material controversy as to the facts upon which Officer Parker relied in making this arrest.  *See* probable cause discussion above. Officer Parker alleges that he had probable cause to arrest Mr. Medley for obstruction of justice in violation of Florida Statute § 843.02.  The statute provides that:

7

> Whoever shall resist, obstruct, or oppose any officer . . . in the execution of legal process or in the lawful execution of a legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree.

Fla. Stat. § 843.02. To support an allegation of arguable probable cause for this crime, the officer must be able to articulate facts which support that (1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that lawful duty. H.A.P. v. State, 834 So.2d 237, 239 (Fla. 3rd DCA 2002). There are no material undisputed facts supporting either prong. Florida courts have held that with the exception of three legal duties, words alone cannot result in obstruction of justice. The exceptions are: (1) serving process; (2) legally detaining a person; or (3) asking for assistance. Jay v. State, 731 So.2d 774, 775 (Fla. 4th DCA 1999).

At the time Officer Parker decided to arrest Mr. Medley he was not serving process, was not detaining a person and was not asking for assistance. (Parker p. 127, line 5 to p. 128, line 8). Therefore, physical conduct must accompany Mr. Medley's offensive words to give rise to probable cause under Florida Statute § 843.02. There was no physical conduct that raised an inference that Mr. Medley physically interfered with Officer Parker. They only physical activity Officer Parker alleges was that Mr. Medley walking in and out of the breezeway, where he had a lawful right to be. (Parker p. 121, lines 1 to 14). If the Defendant's position is accepted, an officer may order someone to leave any time they suspect a criminal suspect to be in the general area. Such is not a rational interpretation of police powers.

This action did not give rise to any legitimate officer safety concern. (Parker p. 108, lines 12 to 15). In fact, Officer Parker admitted he had no officer safety concerns

8

when he stated, he "felt pretty confident" that he could handle the situation before arresting Mr. Medley and that he "felt [he] could accomplish or handle what was in front of [him]" (Parker, p.107, line 25, p. 108, lines 14 to15).  Probable cause exists when the officers at that moment had facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the individual had committed or was committing an offense.  Beck v. Ohio, 379 U.S. 89, 91 (1964).  No offense was being committed.  If there is no probable cause, there can be no valid arrest

Officer Parker attempts to allege that his actions fall under the third exception to the rule that words alone cannot result in obstruction of justice: asking for assistance. (Parker Affidavit ¶ 26).  In fact, Officer Parker stated in his deposition that at no time did he ever ask Mr. Medley for assistance.  (Parker, p. 128, lines 5 to 8).  Even if his request for assistance was to leave the area, he had no lawful basis to force this group to leave. *See* S.D. v. State, 627 So.2d 1261 (Fla. 3rd DCA 1993) (*citing* Hill, 482 U.S. at 461); D.A.W. v. State, 945 So.2d 624 (Fla. 2nd DCA 2006); B.L.M. v. State, 684 So.2d 853 (Fla. 5th DCA 1996); L.A.T. v. State, 650 So.2d 214 (Fla. 3rd DCA 1995).

    C.    **A genuine dispute exists regarding whether Officer Parker used Reasonable Force in arresting Plaintiff.**

"Police use of excessive force is a constitutional violation." McKinney v. DeKalb County*,* 997 F.2d 1440, 1443 (11th Cir.1993).  The protections under the Fourth Amendment which guarantees citizens the right "to be secure in their persons…against unreasonable…seizures" of the person, are invoked "where…the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen. Tennessee v. Garner, 471 U.S. 1, 8 (1985) as quoted in Graham v. Connor, 490 U.S. 386, 394.   All

9

claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395.

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. Tennessee v. Garner, 471 U.S. at 8, *quoting* United States v. Place, 462 U.S. 696, 703 (1983). Application of the reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Tennessee v. Garner, 471 U.S. at 8-9 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure"), as quoted in Graham v. Connor, 490 U.S. 386, 396. Furthermore, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Scott v. United States, 436 U.S. 128, 137-139 (1978); and Terry v. Ohio, 392 U.S. 1, 21 (1968) (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard").

The material facts surrounding Officer Parker's arrest of Mr. Medley are genuinely in dispute as to (1) whether Officer Parker kicked Mr. Medley in the face, (2)

whether he stomped Mr. Medley and (2) whether Officer Parker tased Mr. Medley while his hands were behind his back. (Medley, 137, line 15 to p. 138, line 8). The dispute as to whether these facts occurred must be left to the jury. There was no crime committed by Mr. Medley and therefore, no severity. It is undisputed that Mr. Medley was not committing a crime by verbally protesting and using the breezeway as he was within his lawful rights to do. It is undisputed that Mr. Medley posed no immediate threat of danger to Officer Parker or others at any time during the confrontation with Officer Parker as he had no officer safety concerns. It is undisputed that Mr. Medley offered no active resistance before Officer Parker decided to arrest Mr. Medley, and the facts regarding whether Mr. Medley offered active resistance during the arrest are in dispute. Therefore, under the Graham factors, there was no need to apply force. See Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002) (a minor crime, no serious threat to the officer or others and no active resistance or flight coupled with slamming a head after arrest is "plainly excessive"). At that time, according to Officer Parker's calculations under the use of force matrix, Mr. Medley's actions were consistent with passive resistance (Parker, p. 142, lines 2 to 10). Officer Parker asserted that Mr. Medley's "standing there" in the breezeway constituted passive resistance (Parker, p. 142, line 13). Mr. Medley was not combative or violent, nor was he attempting to actively resist arrest (Parker, p. 142, line 17 to 19).

As Officer Parker walked toward Mr. Medley, Mr. Medley turned away and took a few steps east toward the breezeway (Parker, p. 91, lines 3 to 5). Officer Parker demanded Mr. Medley to get down on the ground at which point, Officer Parker kicked Mr. Medley on the back of the thigh, causing Mr. Medley to lose his balance and fall

forward to the ground (Parker, p. 92, lines 1 to 9).  Officer Parker also kicked Mr. Medley in the face, an action not justified even if there was probable cause to arrest Mr. Medley and even if he offered passive resistance.  (Medley, 138, line 18 to p. 139, line 4; Parker p. 151, lines 17 to 18). As soon as he kicked [Medley] in the face, he just went to stomping me and stomping me and stomping me."  (Medley, p. 119, lines 13 to 20). Officer Parker then put his foot on top of Mr. Medley's hand, behind his back and shot Mr. Medley with the taser in his back.  (Medley, p. 137, line 15 to p. 138, line 8).  The time between kicking Mr. Medley and deploying the taser was only "a couple of seconds" (Parker, p. 99).

Under the use of force continuum, when somebody is offering passive resistance, the types of techniques that may be used in order to get compliance include, pressure points, armed bar wrist locks, and other measures not likely to injure somebody.  (Parker, p. 149).  The use of a taser or the use of a knee or leg strike is not allowed under passive resistance (Parker, p. 149).  Similarly, kicking the face of a person being arrested is not within the officer's power whether responding to passive or active resistance.

A reasonable jury may find that Officer Parker committed battery by going outside the bounds of reasonable force when arresting Mr. Medley.  Where force is used without probable cause, it is inappropriate.  Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000); *citing* Thornton v. City of Macon, 132 F.3 1395 (11th Cir. 1998) and Sheth v. Webster, 145 F.3d 1231 (11th Cir. 1998).  Therefore, the evidence permits a jury to return a verdict for the Plaintiff against the City of Orlando.

## V. CONCLUSION

Based upon the foregoing, Defendant's Motion for Summary Judgment should be denied.

WHEREFORE, Plaintiff, WILLIAM D. MEDLEY, respectfully requests this Honorable Court deny Defendant's Motion for Summary Judgment and for such further relief as this Court deems just and appropriate.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of June, 2009, the foregoing was electronically filed with the Clerk of Court by use of the CME/ECF system, which will provide notice of electronic filing to the following: Bobby G. Palmer, Jr., Esquire, [bpalmer@hilyardlawfirm.com], Hilyard, Bogan & Palmer, P.A., P.O. Box 4973, Orlando, Florida 32802-4973.

    __s/ Jeremy K. Markman_____
JEREMY K. MARKMAN, ESQUIRE
Florida Bar No. 0080594
King & Markman, P.A.
4767 New Broad Street
Orlando, Florida 32814
Tel: (407) 447-0848
Fax: (407) 514-2645
markman@kingmarkman.com
Attorney for the Plaintiff

MM:\JKM\Medley\Pleadings\ResponsetoMSJ.wpd